## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

ALEX PYAKUREL,
*On behalf of himself,*
Damak-13, Biran, Jhapa, Nepal

                    Plaintiff/Petitioner,

MARCO RUBIO, *in his official capacity as*
*U.S. Secretary of State,*
2201 C Street NW
Washington, DC 20520


SCOTT URBOM, *in his official capacity as*
*Chargé d'Affaires ad interim of the United States*
*Embassy in Nepal, U.S. Department of State*;
c/o: U.S. Department of State
2201 C Street NW
Washington, DC 20520


U.S. DEPARTMENT OF STATE, JOHN DOES 1-50,
*in their official capacities as consular officials,*
2201 C Street NW
Washington, DC 20520


                    Defendants/Respondents.

Case No.

### PETITION FOR WRIT OF MANDAMUS
### PURSUANT TO 28 U.S.C. § 1361

## NATURE OF ACTION

1. This is an action under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), seeking to compel Respondents to complete adjudication of Plaintiff's visa application by issuing a final, written adjudicative determination, including a written refusal under applicable law or approval of the visa.

2. Plaintiff does not seek review of the substance of a consular decision, but rather seeks to compel Respondents to perform their nondiscretionary duty to conclude adjudication and memorialize a final decision, rather than leaving Plaintiff in indefinite INA § 221(g) administrative processing without final agency action.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 [federal question jurisdiction] and § 1361 [petition for writ of mandamus], and 5 U.S.C. §§ 702–706 [Administrative Procedures Act].

4. This Court has subject matter jurisdiction over this final agency action pursuant to 5 U.S.C. § 704 [Judicial review of final agency action made reviewable by statute]; 28 U.S.C. §§ 1331, 1361, 2201; the Court may grant relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq.; and the APA. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S. Ct. 2137, 2140, 132 L. Ed. 2d 214 (1995) (whether to exercise jurisdiction under the Federal Declaratory Judgment Act lies within the Court's discretion.).

5. Under the APA, "[a] person suffering legal wrong because of agency action … is entitled to judicial review thereof." 5 U.S.C. § 702. The right to judicial review applies to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. An agency's *inaction* "may represent effectively final agency action ... when administrative inaction has precisely the same impact on the rights

2

of the parties as [a] denial of relief." *Farmer v. United States Env't Prot. Agency*, 805 F. Supp. 3d 253, 259 (D.D.C. 2025).

6. Venue is proper under 28 U.S.C. § 1391(e)(1) where the Respondents who are employed by the U.S. State Department are headquartered in the Harry S. Truman Building, 2201C Street NW in Washington, D.C.

## PARTIES

7. Petitioner, Alex Pyakurel, is a citizen of Nepal and applicant for a F4 visa for brothers and sisters of United States Citizens pursuant to 8 U.S.C. § 1153(a)(4). He is the child of Koshraj Pyakurel and Indira Subedi Pyakurel, a married couple, who were granted visas on the same petition as Alex Pyakurel. Petitioner's visa application has not been properly refused with a written decision pursuant to the regulations and remains separated from his family in Nepal. Petitioner requires a written decision to request reconsideration pursuant to the Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 (2002) (codified, in relevant part, at 8 U.S.C. § 1153(h).

8. Respondent, Marco Rubio, is sued in his capacity as the Secretary of State for the U.S. Department of State who directs the Assistant Secretary of Consular Affairs in the administration of provisions of the Immigration and Nationality Act and other immigration and nationality laws relating to the powers, duties, and functions of diplomatic and consular officers of the United States, except those powers, duties, and functions conferred by law directly upon consular officers. 8 U.S.C. § 1104(a).

9. Respondent, Scott Urbom, is sued in his capacity as the Chargé d'Affaires ad interim of the United States Embassy in Nepal. In his official capacity he is the consular chief who oversees visa adjudication by consular officers pursuant to 22 U.S.C. § 3927.

10. Respondent, John Doe, is sued in his capacity as the Consular Officer who has authority pursuant to approve, refuse, or discontinue granting the visa. 8 U.S.C. 1201(a), 22 C.F.R. §§ 42.71(a), 42.81(e) INA § § 212(a), 221(g), 243(d).

**FACTS**

11. Petitioner was born in Jhapa, Nepal on January 8, 2001, and is currently 25 years old. (Exhibit A: Passport).

12. Petitioner is the child of Koshraj Pyakurel and Indira Subedi Pyakurel, a married couple, who filed visa petitions on the same petition as Alex Pyakurel. (Exhibit B: Birth Certificate and Petitioner's Parents Marriage Certificate; Exhibit C: U.S. Department of State Issued Immigrant Visa Application).

13. Under his parent's petition, a visa petition was filed on Petitioner's behalf, and the underlying priority date is July 26, 2007. (Exhibit D: U.S. Department of State Letter Dated November 23, 2009).

14. The Form I-130 immigrant visa petition was approved on October 22, 2009. (Exhibit E: I-130 Approval Notice).

15. On June 20, 2020, Petitioner completed and submitted the required Form DS-260 immigrant visa application and provided all requested documentation to the National Visa Center. (Exhibit F: Immigrant Visa and Alien Registration Confirmation).

16. The February 2021 Visa Bulletin rendered Petitioner's priority date current and eligible for visa issuance. (Exhibit G: February 2021 U.S. Department of State Visa Bulletin).

17. Petitioner's DS-260, through his father, was subsequently accepted and completed on February 23, 2021, with no further action required. (Exhibit H: Email from NVC).

18. Following documentary processing, the case was scheduled for consular interview processing at the U.S. Embassy in Kathmandu.

19. On July 22, 2024, Petitioner contacted the Embassy to notify consular officials that the principal applicant (Petitioner's father) was seriously ill and unable to attend the scheduled interview. The Embassy responded that the interview could be rescheduled.

20. On August 18, 2024, one day prior to the scheduled interview, Petitioner again informed the Embassy that the principal applicant's treating physician had advised that he could not travel without supervision due to his medical condition. The Embassy reiterated that the interview could be rescheduled through its online system.

21. Shortly thereafter, the Embassy contacted Petitioner by telephone to inform the family of an earlier available interview appointment. Because of the principal applicant's continuing serious medical condition, Petitioner informed the Embassy that they were unable to attend the newly offered appointment. The Embassy acknowledged this and advised that the interview could be rescheduled at a later date when circumstances permitted.

22. After the principal applicant's medical condition improved and he was medically cleared to travel, Petitioner emailed the Embassy on July 28, 2025, requesting that the immigrant visa interview be rescheduled at the earliest available opportunity.

23. Prior to the rescheduled interview, the principal applicant's passport was nearing expiration. Accordingly, Petitioner and the family renewed the passport and completed the required medical examination on August 5, 2025. Petitioner then notified the Embassy that all required steps had been completed and that they were ready to proceed with interview processing. The Embassy thereafter rescheduled the interview.

24. The immigrant visa interview was conducted on October 6, 2025. At the conclusion of the interview, Petitioner's visa was orally refused on the basis of age-out.

25. Petitioner's mother and father's applications were approved and their visas issued showing a case creation date on October 8, 2025. (Exhibit I: U.S. Department of State Issued Immigrant

Visa Application in Case Numbers KDU2009813011 01 KDU & KDU2009813011 02 KDU).

26. Petitioner's case has been left unadjudicated by written decision despite a June 27, 2024, email informing Petitioner's father that the case for an immigrant visa is documentarily complete. (Exhibit H: Email From NVC).

27. Petitioner's father has since become a lawful permanent resident on January 27, 2026, and now resides with his wife, Petitioner's mother, at a fixed address in Texas. (Exhibit J: Permanent Resident Card; Exhibit K: Current Address of Petitioner's parents).

28. Throughout the entire process, Petitioner maintained continuous communication with the Embassy, complied with all instructions, and timely pursued all required steps.

29. Petitioner has preserved documentary evidence of all relevant communications, including email correspondence with the Embassy from July 2024 through October 2025, appointment notices, DS-260 records, and medical documentation of the principal applicant's condition.

30. While no recording exists of the Embassy's telephone communication, Petitioner can provide call log records reflecting such contact.

31. Petitioner respectfully maintains that the delay in interview processing was attributable to the principal applicant's documented medical condition, that Petitioner acted diligently in pursuing the visa process, and that all steps necessary to "seek to acquire" lawful permanent residence were timely undertaken.

32. Petitioner requests that this Court order the Consular Officer responsible for the adjudication of his case to do so pursuant to 9 FAM 504.11-3(A) because Petitioner intends to provide evidence supporting an exception to the denial through a request to reconsider under 8 C.F.R. 42.81(e).

33. Petitioner intends to submit evidence after the adjudication to overcome the ground of ineligibility pursuant to 8 U.S.C. § 1153(h), Child Status Protection Act.

34. Under the Child Status Protection Act ("CSPA"), 8 U.S.C. § 1153(h)(1), a beneficiary's age for purposes of classification as a "child" is calculated by taking the beneficiary's age on the date a visa becomes available and subtracting the number of days the underlying immigrant visa petition was pending. Additionally, under 8 U.S.C. § 1153(h)(1)(A), the beneficiary must have "sought to acquire" lawful permanent resident status within one year of visa availability, subject to limited equitable exceptions recognized by agency guidance and case law.

35. Petitioner falls within the protection of the CSPA because the February 2021 Visa Bulletin rendered his priority date current, thereby establishing the operative "visa availability" date for age calculation purposes.

36. At that time, Petitioner was under 21 years of age in biological terms, and when the statutory subtraction for the I-130 petition's pendency is applied, his adjusted CSPA age appears to remain below the age of 21.

37. Petitioner satisfied the "sought to acquire" requirement by submitting Form DS-260 and completing documentary processing prior to visa availability, which is generally accepted by the Department of State and federal courts as sufficient affirmative action toward acquiring lawful permanent residence.

38. Accordingly, Petitioner retained classification as a "child" under the CSPA at the time of visa availability and therefore should not have been deemed ineligible based on aging out at the time of consular adjudication.

39. The Consular Officers failure to adjudicate Petitioner's visa with a written refusal following the oral refusal is preventing him from providing a request for reconsideration. 22 C.F.R. § 42.81(e).

**LEGAL FRAMEWORK**

40. A consular officer has the authority to issue and refuse immigrant visa petitions. 8 U.S.C. §

1201(a)(1), 22 C.F.R. § 42.81.

41. When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa. 22 C.F.R. § 42.81(a).

42. When an immigrant visa is refused, an appropriate record shall be made in duplicate on a form prescribed by the Department. The form shall be signed and dated by the consular officer. The consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available. Each document related to the refusal shall then be attached to Form DS-230 for retention in the refusal files. Alternatively, each document related to the refusal shall be electronically scanned and electronically attached to Form DS-260 for retention in the electronic refusal files. 22 C.F.R. § 42.81(b).

43. Under the Foreign Affairs Manual, when a consular officer refuses an immigrant visa under INA 221(g), the officer must provide both oral and written notice of the refusal and its basis. 9 FAM 504.11-3(A)(1)(e). The refusal is not discretionary in its form; rather, the officer may issue a refusal letter without prior Departmental approval, provided that the letter complies with mandatory content requirements. Id. Specifically, the refusal letter must (1) state the statutory provision under which the visa is refused, (2) neither encourage nor discourage the applicant from reapplying, and (3) include required standardized language informing the applicant that the decision constitutes a visa denial for purposes of U.S. visa adjudications and ESTA eligibility. Id. For petition-based visa categories, the letter must further include notice that if the applicant fails to take the requested action within one year of the INA 221(g) refusal,

the underlying petition may be permanently terminated pursuant to INA 203(g). *Id.*

44. Following issuance of a refusal, the consular post is required to enter the refusal into the automated consular system. 9 FAM 504.11-3(A)(4)(b); see also 9 FAM 303.3. The Foreign Affairs Manual further provides that the refusal entry process applies to INA 221(g) cases in accordance with post-specific procedures governing automated recording of refusals. 9 FAM 504.11-3(A)(1)(f). These system entries ensure that the refusal is formally recorded and accessible for interagency screening and visa adjudication purposes.

45. The Department of State also requires the maintenance of a "Refusal File" for each refused visa case. 9 FAM 504.11-3(A)(5). This file must contain at minimum one copy of each document submitted by the applicant, as well as any documents relating to the applicant's ineligibility, organized according to the applicable refusal category. Id. Category I refusal files include cases involving inadmissibility under INA 212(a)(1), (2), (3), (6), and (8), while Category II files include all other refusal categories. Id. The maintenance of a refusal file ensures preservation of the evidentiary record underlying the consular decision and any subsequent adjudicatory action.

46. Importantly, a refusal under INA 221(g) is not necessarily final and may be overcome through further action. The Foreign Affairs Manual provides that a consular officer should find that an applicant has overcome a 221(g) refusal in two circumstances: either when the applicant submits additional evidence sufficient to permit reopening and re-adjudication of the case, or when required administrative processing has been completed. 9 FAM 504.11-4(A). In such instances, the case remains within the same adjudicatory framework and is subject to completion of the visa decision-making process rather than requiring a new application. *Id.*

47. If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the

case shall be reconsidered. 22 C.F.R. § 42.81(e).

**CLAIMS FOR RELIEF**

**COUNT I: VIOLATION OF PETITIONER'S RIGHT TO VISA ADJUDICATION THROUGH UNLAWFUL WITHHOLDING.**

(Unlawful Withholding of Final Agency Action / Failure to Complete Visa Adjudication)

48. Plaintiff realleges and incorporates all preceding paragraphs.

49. The Administrative Procedure Act requires courts to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

50. This Court has routinely exercised jurisdiction over claims challenging the Government's failure to complete visa adjudication. See *Thomas v. Pompeo*, 2020 U.S. Dist. LEXIS 21321, at *10 (D.D.C. 2020); *Moghaddam v. Pompeo*, 2020 U.S. Dist. LEXIS 10710, at *14 (D.D.C. 2020); *Kinsley v. Blinken*, 2021 U.S. Dist. LEXIS 191526, at *11–13 (D.D.C. 2021).

51. Courts have also recognized that consular non-reviewability does not extend to claims challenging the absence of a final decision. See *Jaraba v. Blinken*, 2021 U.S. Dist. LEXIS 216253, at *13–14 (W.D. Tex. 2021).

52. Plaintiff is the beneficiary of an approved F4 immigrant visa petition and has completed all required consular processing steps.

53. At the conclusion of Plaintiff's interview, Respondents orally indicated that the visa was "refused" and/or subject to INA § 221(g), but failed to issue a written refusal consistent with the requirements of the Foreign Affairs Manual, 9 FAM 504.11-3, which mandates formal written refusal notifications.

54. Because no written refusal was issued, the adjudication has not been completed in the manner required by law, and no final agency action exists.

55. This failure prevents the statutory and regulatory framework—including reconsideration under 22 C.F.R. § 42.81(e)—from operating as intended.

56. Under *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 10 (D.D.C. 2024), consular officers have a continuing nondiscretionary duty to complete adjudication of visa applications and issue a final decision, supporting APA and mandamus jurisdiction where adjudication remains incomplete.

57. Respondents' failure to issue a written refusal and complete adjudication constitutes agency action unlawfully withheld.

58. Plaintiff is entitled to an order compelling Respondents to complete adjudication by issuing a lawful written decision consistent with the INA, the FAM, and governing regulations.

## COUNT II – VIOLATION OF PETITIONER'S RIGHT TO VISA ADJUDICATION THROUGH UNREASONABLE DELAY

(Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1))

59. Petitioner realleges and incorporates all preceding paragraphs as though fully set forth herein.

60. The Administrative Procedure Act ("APA") requires federal agencies to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555(b).

61. The APA further authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

62. Respondents have unlawfully withheld and unreasonably delayed completion of adjudication of Petitioner's immigrant visa application by failing to issue a lawful written decision following Petitioner's immigrant visa interview.

63. Petitioner is the beneficiary of an approved F4 immigrant visa petition and completed all required processing steps before the U.S. Consulate, including submission of required civil documents, payment of fees, and attendance at the immigrant visa interview.

64. At the conclusion of the interview, a consular officer orally informed Petitioner that the visa was "refused" and/or subject to INA § 221(g), yet Respondents failed to issue a written refusal notice identifying any statutory basis of inadmissibility under INA § 212(a), INA § 221(g), INA § 243(d), or any other provision of law.

65. The Foreign Affairs Manual requires visa refusals to be formally documented and issued in writing. See 9 FAM 504.11-2 (Refusal Procedures). Respondents' failure to issue a written refusal has prevented adjudication from being completed in the manner required by law.

66. Because Respondents failed to issue a written refusal, Petitioner has been deprived of the ability to invoke reconsideration procedures under 22 C.F.R. § 42.81(e), which provides that where an applicant adduces further evidence tending to overcome a ground of ineligibility within one year of refusal, the case "shall be reconsidered."

67. This Court has recognized that consular officers possess a continuing nondiscretionary duty to complete adjudication of visa applications and issue final decisions. *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 10 (D.D.C. 2024).

68. This Court has further recognized that the doctrine of consular non-reviewability does not apply where the Government has failed to issue a final decision. *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry*, 168 F. Supp. 3d 268, 291 (D.D.C. 2016).

69. Whether agency delay is unreasonable is evaluated under the factors articulated in *Telecommunications Research & Action Center v. FCC* ("TRAC"), 750 F.2d 70, 79–80 (D.C. Cir. 1984).

70. In *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"), the D.C. Circuit identified six non-exclusive factors that guide the unreasonable delay analysis:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (quotation marks and citations omitted); see *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (recognizing that the TRAC factors are not exhaustive).

71. Under the first TRAC factor, Respondents' delay is not governed by any "rule of reason" because Respondents have failed to complete adjudication by issuing a written refusal or final decision in accordance with governing regulations and agency procedures.

72. Under the second TRAC factor, Congress has supplied content for the rule of reason through the statutory and regulatory framework governing immigrant visa adjudications, including 22 C.F.R. § 42.81(e), which contemplates prompt issuance of refusal determinations so that reconsideration rights may be exercised within one year.

73. Under the third and fifth TRAC factors, the delay implicates substantial human welfare interests. Petitioner seeks reunification with family members through the family-sponsored F4 immigrant visa category established by Congress. Continued failure to complete adjudication prolongs family separation and prevents Petitioner from pursuing reconsideration procedures expressly provided by regulation.

74. Under the fourth TRAC factor, requiring Respondents to issue a written refusal and complete adjudication would not improperly reorder agency priorities because Petitioner does not seek

13

preferential treatment, but only compliance with mandatory adjudicatory procedures already required by law and the Foreign Affairs Manual.

75. Under the sixth TRAC factor, Respondents need not have acted with impropriety for the delay to be unlawful. Nonetheless, Respondents' failure to issue any written refusal while simultaneously orally representing that the visa had been refused has left Petitioner without any administratively cognizable decision from which regulatory rights may flow.

76. Respondents' failure to issue a written refusal and complete adjudication constitutes agency action unlawfully withheld and unreasonably delayed under 5 U.S.C. §§ 555(b) and 706(1).

77. Petitioner has no adequate alternative remedy available.

78. Petitioner is therefore entitled to relief compelling Respondents to complete adjudication of the immigrant visa application by issuing a lawful written decision consistent with the INA, governing regulations, and Department of State procedures.

## COUNT III – VIOLATION OF PETITIONER'S RIGHT TO PROCEDURAL DUE PROCESS BASED ON THE IMPLICATION OF FAMILY UNITY

(U.S. Const. amends. V, XIV)

79. Under the doctrine of consular non-reviewability, an executive officer's decision "to admit or to exclude an alien" "is final and conclusive," *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 547, 70 S.Ct. 309, 94 L.Ed. 317 (1950), and not subject to judicial review in federal court. The United States Supreme Court has assumed a narrow exception in cases "when the denial of a visa allegedly burdens the constitutional rights of a U. S. citizen." *Trump v. Hawaii*, 585 U.S. 667, 703, 138 S.Ct. 2392, 201 L.Ed.2d 775 (2018). In that event, the Court has considered whether the executive official gave a "facially legitimate and bona fide reason" for denying the visa. *Kerry v. Din*, 576 U.S. 86, 103–104, 135 S.Ct. 2128, 192 L.Ed.2d 183 (2015). If so, the inquiry is at an end—the Court has disclaimed the authority to "'look behind the

exercise of that discretion,'" much less to balance the reason given against the asserted constitutional right. *Din*, 576 U.S., at 104, 135 S.Ct. 2128.

80. The Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U. S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). When a fundamental right is at stake, the government can act only by narrowly tailored means that serve a compelling state interest. To identify an unenumerated right, the Court follows the two-step inquiry in *Glucksberg*. That inquiry first insists on a "careful description of the asserted fundamental liberty interest." *Id.,* at 721, 117 S.Ct. 2258 (internal quotation marks omitted). Second, the inquiry stresses that "the Due Process Clause specially protects" only "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Id.,* at 720–721, 117 S.Ct. 2258 (same) The United States Supreme Court recognizes "two categories of implied rights protected by the Due Process Clause: really fundamental rights, which cannot be taken away at all absent a compelling state interest; and not-so-fundamental rights, which can be taken away, so long as procedural due process is observed." See *Din*, 576 U.S., at 99, 135 S.Ct. 2128 (plurality opinion).

81. The U.S. Supreme Court has already recognized that excluding a noncitizen from the country can burden the constitutional rights of citizens who seek his presence. See *Kleindienst v. Mandel*, 408 U.S. 753, 765–770, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972).

82. In *Dep't of State v. Munoz*, 602 U.S. 899 at 916, 144 S. Ct. 1812, 1825, 219 L. Ed. 2d 507 (2024) the U.S. Supreme Court recognized that Congress can use its authority over immigration to prioritize the unity of the immigrant family. *Din*, 576 U.S., at 97, 135 S.Ct. 2128 (plurality opinion). See, *e.g.*, § 1151(b)(2)(A)(i) (exempting "immediate relatives" from certain numerical quotas). It has frequently done just that. But the Constitution does

not *require* a particular outcome. *Dep't of State v. Munoz*, 602 U.S. at 916.

83. As recognized in *Dep't of State v. Munoz*, 602 U.S. 899, 926, 144 S. Ct. 1812, 1831, 219 L. Ed. 2d 507 (2024) a noncitizen denied admission via consular processing is entitled to nothing more than a cite to the statute under which the consular officer decided to exclude him. § 1182(b)(1). He has no opportunity for administrative or judicial review and can only submit more evidence and request reconsideration. 22 C.F.R. § 42.81(e).

84. Here, consistent with *Glucksberg*, Petitioner asserts the implication of a fundamental right to family unity based on the U.S. Supreme Court's recognition that there is a right to maintain certain familial relationships, including association among members of an immediate family and association between grandchildren and grandparents. See *Moore v. East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). "Th[e] Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 639-640, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974). A host of cases, tracing their lineage to *Meyer v. Nebraska*, 262 U.S. 390, 399-401, 43 S.Ct. 625, 626-627, 67 L.Ed. 1042 (1923), and *Pierce v. Society of Sisters*, 268 U.S. 510, 534-535, 45 S.Ct. 571, 573-574, 69 L.Ed. 1070 (1925), have consistently acknowledged a "private realm of family life which the state cannot enter." *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). *Loving v. Virginia*, 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967); *May v. Anderson*, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953); *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942). Of course, the family is not beyond regulation. See *Prince v. Massachusetts*, *supra*, 321 U.S. at 166, 64 S.Ct. at 442. But when the government intrudes on choices concerning family living

arrangements, this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation. See *Poe v. Ullman*, supra, 367 U.S., at 554, 81 S.Ct. at 1782 (Harlan, J., dissenting).

85. Second, Petitioner asserts a violation of procedural due process in that the consular officer's failure to produce a written decision on which the consular officer decided to refuse him so that he could submit more evidence and request reconsideration. 22 C.F.R. § 42.81(e). Consistent with *Din,* Petitioner only seeks a "facially legitimate and bona fide reason" that was used to refuse the petition and is not requesting this court to "look behind the exercise of that discretion," much less to balance the reason given against the asserted constitutional right. *Din*, 576 U.S., at 104, 135 S.Ct. 2128.

86. Accordingly, Petitioner does not seek wholesale judicial review of a discretionary consular determination in contravention of the doctrine of consular non-reviewability. Rather, Petitioner asserts narrowly tailored procedural due process grounded in the constitutional protection afforded to familial association and in the limited procedural safeguards recognized by Congress, the governing regulations, and the Supreme Court's decisions in *Din* and *Munoz*. Petitioner is entitled to a facially legitimate and bona fide explanation for the refusal sufficient to permit meaningful reconsideration under the governing regulatory framework.

## **REQUESTS FOR RELIEF**

### **REQUEST FOR DECLARATORY JUDGMENT (28 U.S.C. § 2201)**

(Failure to Comply with Statutory, Regulatory, and
FAM Requirements Governing Visa Refusal and Reconsideration)

87. Plaintiff realleges and incorporates all preceding paragraphs.

88. Under 28 U.S.C. § 2201, this Court may declare the rights and legal relations of parties in a case of actual controversy.

89. Federal courts have jurisdiction under 28 U.S.C. § 1331 to determine whether consular action complies with statutory and regulatory authority. See *Abourezk v. Reagan*, 785 F.2d 1043, 1050 (D.C. Cir. 1986); *Sukhwinder Singh v. Clinton*, 618 F.3d 1085, 1088 (9th Cir. 2010).

90. Courts may review whether consular officers properly interpret and apply governing law. See *Patel v. Reno*, 134 F.3d 929, 932 n.1 (9th Cir. 1997); *American Academy of Religion v. Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009).

91. The doctrine of consular non-reviewability does not apply where no final visa decision has been issued or where mandatory procedures have not been followed. See *Nine Iraqi Allies*, 168 F. Supp. 3d at 291; *P.K. v. Tillerson*, 302 F. Supp. 3d 1, 11 (D.D.C. 2017).

92. An actual controversy exists regarding whether an oral refusal or informal § 221(g) notification without issuance of a written refusal required by 9 FAM 504.11-2 satisfies statutory and regulatory requirements governing immigrant visa adjudications.

93. Plaintiff further seeks a declaration that Respondents' failure to issue a written refusal unlawfully prevents the triggering of reconsideration rights under 22 C.F.R. § 42.81(e).

94. Plaintiff requests a declaration that Respondents must issue a written visa refusal consistent with the Foreign Affairs Manual and complete adjudication in accordance with law.

### REQUEST FOR MANDAMUS RELIEF (28 U.S.C. § 1361)

(Failure to Issue Written Visa Refusal and Complete Mandatory Adjudication Under 22 C.F.R. § 42.81(e) and the Foreign Affairs Manual)

95. Plaintiff realleges and incorporates all preceding paragraphs.

96. Plaintiff is the beneficiary of an approved F4 immigrant visa petition and has completed all required consular processing, including interview at the U.S. Consulate.

97. At the conclusion of the interview, a consular officer orally informed Plaintiff that his visa was "refused" and/or placed in INA § 221(g) administrative processing status. However,

Respondents did not issue any written refusal notice and did not provide any documentation identifying a statutory ground of inadmissibility.

98. The Foreign Affairs Manual (FAM) requires that visa refusals be formally recorded and issued in writing. See 9 FAM 504.11-2 (Refusal Procedures) (requiring consular officers to document refusals and issue written notice identifying the statutory basis for refusal and entering the refusal into the Department's visa systems).

99. Under the FAM framework, an INA § 221(g) refusal is not complete unless it is formally documented and communicated to the applicant in writing through the prescribed refusal process. An oral communication of refusal does not satisfy the Department's mandatory adjudicatory procedures.

100.    Federal regulation further provides that where an applicant submits additional evidence tending to overcome a ground of ineligibility within one year of refusal, the case "shall be reconsidered." 22 C.F.R. § 42.81(e).

101.    The written refusal required by the FAM is the operative act that triggers the regulatory reconsideration framework under 22 C.F.R. § 42.81(e). Without a written refusal, the reconsideration process cannot be initiated as a matter of law or procedure.

102.    Courts have recognized that mandamus is appropriate where consular officers fail to perform nondiscretionary duties in the visa adjudication process. See *Rivas v. Napolitano*, 677 F.3d 849, 852 (9th Cir. 2012) (regulation imposing duty to reconsider is enforceable); *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 10 (D.D.C. 2024) (recognizing that consular officers have a continuing nondiscretionary duty to complete adjudication of a visa application and issue a final decision, supporting mandamus relief where adjudication remains incomplete).

103.    The doctrine of consular non-reviewability does not apply where the Government has not issued a final decision. See *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry*, 168 F. Supp. 3d 268, 291 (D.D.C. 2016).

104.    Here, because Respondents failed to issue a written refusal in accordance with the FAM and failed to complete adjudication in a legally cognizable form, no final consular decision exists.

105.    Respondents therefore have a clear, nondiscretionary duty to: (a) issue a written visa refusal consistent with 9 FAM 504.11-3(A); and (b) complete adjudication of Plaintiff's visa application by issuing a final decision.

106.    Plaintiff has no adequate alternative remedy.

107.    Plaintiff is entitled to a writ of mandamus compelling Respondents to perform these mandatory duties.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Petitioner prays that this Court grant the following relief:

a.  Assume jurisdiction over this matter;

b.  Issue a writ of mandamus requiring that Respondents adjudicate Petitioner's F4 visa petition according to the procedures in the statutes, regulations, and Foreign Affairs Manual;

c.  Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

d.  Grant any other and further relief that this Court deems just and proper.

Dated: June 2, 2026                                   Respectfully submitted,


/s/ Ripal Patel
Ripal Patel, Esq.
DC Bar #90029846
The Ripal Law Firm, LLC
2302 Parklake Dr. NE, Suite 655
Atlanta, GA 30345
Ripal@therplaw.com
*Attorney for Petitioner*

# <u>CERTIFICATE OF SERVICE</u>

I, RIPAL PATEL certify that on June 2, 2026, I served one set of **PETITION FOR WRIT OF MANDAMUS** PURSUANT TO 28 U.S.C. § 1361: **SUMMONSES IN A CIVIL ACTION; AND CIVIL COVER SHEET** by electronically by ECF filing upon Attorney for Respondents and parties at the following addresses:

1.  U.S. Department of State

    2201 C Street NW

    Washington, DC 20520

2.  U.S. Embassy in Kathmandu, Nepal

    c/o U.S. Department of State

    2201 C Street NW

    Washington, DC 20520

3.  U.S. Department of Justice

    950 Pennsylvania Avenue, NW

    Washington, DC 20530

4.  U.S. Attorney's Office for the District of Columbia

    601 D Street, NW

    Washington, DC 20530

/s/ Ripal Patel
Ripal Patel, Esq
THE RP LAW FIRM LLC
2302 PARKLAKE DR SUITE 655
ATLANTA, GA 30345
Phone: (770) 744-3378
DC Bar #90029846
Ripal@therplaw.com